UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | 1:16-po-00005-JCN |
| | ) | |
| THOMAS EDEN, | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OF DECISION ON
DEFENDANT'S MOTION TO SUPPRESS**

This matter is before the Court on Defendant's motion to suppress. (ECF No. 9.) Through his motion, Defendant contends law enforcement lacked a reasonable articulable suspicion to "seize" him while he was camping in Acadia National Park on August 3, 2016. Following a hearing, and after consideration of the parties' arguments, the Court denies the motion.

**Factual Background**

During the evening of August 3, 2016, Darren Belskis, a ranger in Acadia National Park, while on foot patrol in the Blackwoods Campground of the park, heard some noise during quiet hours (10 p.m. – 6 a.m.), and walked toward the direction of the noise. As he approached the location of the noise, he smelled marijuana. He determined the smell was coming from Defendant's campsite.

While at the entrance to the campsite, Ranger Belskis observed two individuals, one male and one female. He witnessed the female hand a vapor pen to the male. A vapor pen is a device used to smoke a variety of substances. The male appeared to conceal the item

in one of his hands. Ranger Belskis directed Defendant to put down the vapor pen. Defendant put the pen in the pocket of the short pants he was wearing at the time.

When Defendant did not take the pen out of his pocket and make it available to Ranger Belskis, Ranger Belskis placed Defendant in handcuffs. According to Ranger Belskis, he placed Defendant in handcuffs to gain control of the situation as he was concerned for his safety and about the possible destruction of evidence. Ranger Belskis cited the time of night (approximately 11 p.m.), Defendant's apparent use of an intoxicating drug, and Defendant's failure to follow his instruction to put down the vapor pen as the factors that generated the safety concern.

After placing Defendant in handcuffs, Ranger Belskis frisked Defendant and removed the vapor pen from Defendant's pocket. Ranger Belskis then requested that an associate come to the campsite with a field test so that he could confirm that the vapor pen contained a controlled substance. The content of the vapor pen tested positive for THC. Because of the delay occasioned by the request for a field test from another ranger, the encounter lasted approximately thirty to thirty-five minutes.

## Discussion

The Government bears the burden of establishing that a stop complied with the Fourth Amendment. *United States v. Lopez*, 380 F.3d 538, 543 (1st Cir. 2004). "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu,* 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio,* 392 U.S. 1, 9 (1968)). To determine whether a stop was reasonable, the Court must assess

"(1) whether the officer's action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *United States v. Moore*, 235 F.3d 700, 703 (1st Cir. 2000) (citations and internal quotations omitted).

Where the detention of a suspect is more burdensome than a brief investigatory stop, it is generally analyzed as an arrest.[1] A warrantless arrest is permitted when "the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." *United States v. Torres-Maldonado*, 14 F.3d 95, 105 (1st Cir. 1994). "[I]n order to establish that probable cause existed for such an arrest, the government need not present the quantum of proof necessary to convict." *Id.* (internal quotation marks omitted). "The standard of probable cause is the probability, not a *prima facie* showing, of criminal activity." *United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir. 1986). The standard is met when the totality of the circumstances indicate there is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

In the absence of probable cause to arrest, an officer may still conduct an investigatory stop where he has knowledge of "specific and articulable facts which, taken together with rational inferences," generate a reasonable suspicion that criminal activity "may be afoot." *Terry*, 392 U.S. at 21, 30. "A finding of reasonable suspicion requires a

---

[1] "To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited. . . . For example, the seizure can not continue for an excessive period of time, or resemble a traditional arrest." *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt Cty.*, 542 U.S. 177, 185 – 86 (2004) (internal quotation marks and citation omitted).

3

particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Brown*, 621 F. 3d 48, 55 (1st Cir. 2010) (quoting *United States v. Espinoza*, 490 F.3d 41, 47 (1st Cir. 2007)).

The Government does not dispute that Ranger Belskis' encounter with Defendant constituted a stop or seizure. Given that Ranger Belskis temporarily placed Defendant in handcuffs and otherwise prevented him from leaving the campsite, Ranger Belskis unquestionably seized Defendant. The issue is whether Ranger Belskis had either reasonable suspicion for the seizure and/or probable cause to arrest Defendant.

Marijuana is a Schedule I controlled substance under federal law. 21 U.S.C. § 812(c), Schedule I(c)(10). As such, the possession of marijuana in Acadia National Park constitutes a federal offense. 36 C.F.R. § 2.35(b)(2). "It is well settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3rd Cir. 2006) (citing *United States v. Humphries*, 372 F.3d 653 (4th Cir. 2004); *United States v. Winters*, 221 F.3d 1039 (8th Cir. 2000)).

Here, as he arrived at Defendant's campsite, Ranger Belskis smelled burning marijuana and observed Defendant in possession of a device that is used to smoke a number of substances. Insofar as the possession of marijuana in Acadia National Park is illegal, Ranger Belskis plainly had a reasonable basis for an investigatory stop or seizure. The fact that Ranger Belskis had a reasonable basis for a *Terry* stop, however, does not end the inquiry. Defendant also challenges Ranger Belskis' frisk of him, which frisk produced the vapor pen. During a valid *Terry* stop, an officer may conduct a pat-down search or frisk if

4

the officer "has some articulable, reasonable suspicion that the person[] stopped may be dangerous." *United States v. Tiru-Plaza*, 766 F. 3d 111, 116 (1st Cir. 2014) (quoting *United States v. McGregor*, 650 F.3d 813, 820 (1st Cir. 2011)).  A pat-down search "must be strictly limited to that which is necessary for the discovery of weapons." *United States v. Campa*, 234 F.3d 733, 737-38 (1st Cir. 2000) (citations and internal quotations omitted).

The Government maintains the pat-down search was reasonable "to ensure officer safety." (Response to Motion at 4). More specifically, the Government contends "Ranger Belskis was reasonably concerned that the defendant may be armed and dangerous because the defendant possessed illegal drugs, he did not comply with orders, and he concealed the vapor pen." (*Id.*)  In *Terry*, the Supreme Court held that "there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Terry*, 392 U.S. at 27.

The Court is not persuaded that Ranger Belskis had reason to believe Defendant was armed and dangerous.  While in certain circumstances a person's failure to follow the directives of a law enforcement officer can generate legitimate safety concerns, in this case, the fact that Defendant did not comply with a directive to put down the vapor pen and Ranger Belskis' suspicion that Defendant was under the influence of an intoxicant do not generate a valid safety concern that justifies a pat down.  Although in some instances suspected drug use might support a safety search, suspected use at a campsite under the circumstances in this case does not generate a safety concern.  In this case, the search was

most likely prompted by Ranger Belskis' desire to secure the contraband he observed Defendant place in his pocket, and was not the product of a safety concern.

The search, however, could nevertheless be valid if Ranger Belskis had probable cause to believe Defendant committed a criminal offense in his presence. While on foot patrol, Ranger Belskis smelled marijuana, traced the smell to Defendant's campsite, observed Defendant and a companion use and pass a vapor pen, observed Defendant conceal the vapor pen in his hand as Ranger Belskis approached, and observed Defendant place the vapor pen in his pocket after Ranger Belskis asked him to relinquish the item. Given his observations, Ranger Belskis had a reasonable basis to believe that Defendant had committed and was committing a criminal offense in his presence (i.e., possession of a controlled substance in a park in violation of 36 C.F.R. § 2.35(b)(2)).

Defendant, however, argues that Ranger Belskis did not have probable cause to arrest because federal law recognizes an exception to a controlled substance offense when the substance in question "was obtained by the possessor directly, or pursuant to a valid prescription or order, from a practitioner acting in the course of professional practice or otherwise allowed by Federal or State law." 36 C.F.R. § 2.35(b)(2). According to Defendant, because Ranger Belskis could not know whether Defendant had a medical marijuana license and did not first inquire whether he had a license, Ranger Belskis could not reasonably conclude that Defendant had committed or was committing a criminal offense.

Importantly, Ranger Belskis was not required to have "the quantum of proof necessary to convict." *Torres-Maldonado*, 14 F.3d at 105. (citations and internal quotation

marks omitted).  For probable cause, Ranger Belskis must have a reasonable basis to believe Defendant "had committed or was committing an offense." *Id.*  The possibility that Defendant could have had a medical marijuana license would not negate a probable cause determination.  Many courts have in fact concluded that a medical marijuana license or permit provides a defendant with an affirmative defense, but does not negate a probable cause determination.  *Sinclair v. City of Grandview*, 973 F. Supp. 2d 1234, 1259 (E.D. Wash. 2013); *United States v. Ellis,* 910 F. Supp. 2d 1008, 1017 (W.D. Mich. 2012); *Assenberg v. Cty. of Whitman*, No. 2:14-CV-00145, 2015 WL 5178032, at *10 (E.D. Wash. Sept. 4, 2015) (citing *State v. Fry,* 228 P.3d 1 (Wash. 2010) (en banc) ("An affirmative defense does not per se legalize an activity and does not negate probable cause that a crime has been committed.")); *United States v. Liu*, No. 2:13-CR-00050, 2015 WL 163006, at *4 – *5 (E.D. Cal. Jan. 7, 2015); *Jones v. Lehmkuhl*, No. 1:11-CV-02384, 2013 WL 6728951, at *19 (D. Colo. Dec. 20, 2013); *Stewart v. Morris*, No. 1:10-CV-04106, 2013 WL 5268977, at *8 & n.10 (N.D. Cal. Sept. 17, 2013).  *See also Acosta v. Ames Dep't Stores, Inc.*, 386 F.3d 5, 11 (1st Cir. 2004) ("[O]nce a law enforcement officer unearths sufficient facts to establish probable cause, she has no constitutional duty either to explore the possibility that exculpatory evidence may exist or to conduct any further investigation in the hope of finding such evidence.").

     Because probable cause supported the detention of Defendant for a drug possession offense, the warrantless search of Defendant and seizure of evidence of the crime under investigation – evidence that was in plain view before Defendant moved it to his pocket –

were reasonable under the Fourth Amendment. *Texas v. Brown*, 460 U.S. 730, 741 – 42 (1983); *United States v. Robinson*, 414 U.S. 218, 235 – 236 (1973).

Defendant also argues that Ranger Belskis and his associate violated the Fourth Amendment protections when they conducted a field test on the oil contained in the vapor pen, and that the duration of the stop was excessive. Defendant likens the vapor pen to a closed container. The length of the detention is directly related to Ranger Belskis' decision to wait for the arrival of a field test to confirm his probable cause determination.

Where enclosed opaque containers are at issue, probable cause to seize the container does not necessarily justify a warrantless search of its contents. *United States v. Doe*, 61 F.3d 107, 111 (1st Cir. 1995) (citing *Texas v. Brown,* 460 U.S. at 743 (involving validity of warrantless seizure of tied-off balloon containing drugs, where "the distinctive character of the balloon itself spoke volumes as to its contents")). "These discrete treatments stem from the recognition that seizure temporarily deprives the defendant of a *possessory* interest only, whereas a search entails an intrusion upon *privacy* interests as well." *Id.* (emphasis in original). "Normally, therefore, once an exigency ends, as by an arrest or the seizure and custodial retention of a container by the police, a *neutral judicial officer* must authorize any subsequent search on a showing of probable cause." *Id.* (emphasis in original).

This rule is subject to exceptions, however. In particular, "some containers (for example, a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." *Arkansas v. Sanders*, 442 U.S. 753, 765 n.13 (1979). Here, the question is

8

whether Defendant could have a reasonable expectation of privacy in the content of his vapor pen.

In *United States v. Jacobsen*, 466 U.S. 109 (1984), the Supreme Court held that where agents lawfully came into possession of a package that was leaking a white powdery substance, and "it was apparent that the [package] contained contraband and little else," it was reasonable for the agents not only to seize the package and its contents, but also to conduct a field test to confirm the existence of contraband. *Id.* at 121 – 22.  Although the agent's field test of the substance went beyond what was necessary to preserve evidence in anticipation of a search warrant, the Court concluded that a field test to determine whether the substance was cocaine did not compromise any legitimate privacy interest precisely because it would divulge "no other arguably 'private' fact" that was not already apparent. *Id.* at 123.  To illustrate the distinction, the Court explained that a field test was unlike rummaging through a container, such as luggage, which conduct could potentially uncover contraband, but also could "expose noncontraband items that otherwise would remain hidden from view." *Id.* at 124 (quoting *United States v. Place*, 462 U.S. 696, 707 (1983) (discussing the utility of canine sniffs to detect the presence of contraband without invading the privacy associated with a closed container)).

In this case, where the only reasonable inference was that the vapor pen contained some form of ingestible substance and did not include any property in which Defendant could reasonably claim a privacy interest, the field test did not compromise a legitimate privacy interest that was not already compromised by the seizure based on probable cause to believe the vapor pen contained marijuana.

Finally, because the seizure of Defendant was supported by probable cause and did not last much longer than thirty minutes, any delay caused by the field test did not render the seizure unreasonable. Seizures longer than thirty minutes have been held reasonable even in the context of *Terry* stops, even where probable cause might be lacking. *United States v. Acosta-Colon*, 157 F.3d 9, 20 (1st Cir. 1998); *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004); *United States v. Davies*, 768 F.2d 893, 902 (7th Cir.), *cert. denied*, 474 U.S. 1008 (1985). In short, the length of the seizure in this case was not unreasonable given the existence of probable cause from the initial stages of the encounter.

## Conclusion

Based on the foregoing analysis, the Court denies Defendant's motion to suppress.
SO ORDERED.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 29th day of March, 2017.